ESTADO LIBRE ASOCIADO DE PUERTO RICO
TRIBUNAL DE APELACIONES
PANEL XII

| | | |
|---|---|---|
| VÍCTOR GUTIERREZ GONZÁLEZ<br><br>Parte Recurrida<br><br>V.<br><br>ERIKA ROSARIO TORRES<br><br>Parte Peticionaria | KLCE202400892 | *Certiorari* procedente del Tribunal de Primera Instancia, Sala San Juan<br><br>Caso Núm. SJ2023RF01684<br><br>Sala: 705<br><br>Sobre:<br><br>CUSTODIA |

Panel integrado por su presidenta, la Jueza Grana Martínez, el Juez Candelaria Rosa, la Jueza Rivera Pérez y la Jueza Díaz Rivera.

**Rivera Pérez, Jueza Ponente**

### RESOLUCIÓN

En San Juan, Puerto Rico, a 9 de septiembre de 2024.

Comparece ante nos la parte peticionaria Sr. Víctor Gutiérrez González (en adelante, Sr. Gutiérrez González) mediante un recurso de *Certiorari* y nos solicita la revisión de la *Resolución* emitida el 4 de junio de 2024 por el Tribunal de Primera Instancia, Sala Superior de San Juan. Mediante dicho dictamen, se estableció una pensión alimentaria provisional de $655.00 mensuales para el periodo del 22 de noviembre de 2023 al 30 de marzo de 2024 y de $669.00 mensuales del 1 de abril de 2024 en adelante para beneficio de la menor M.G.R, la cual debía ser pagada por el Sr. Gutiérrez González a la parte recurrida Sra. Erika Rosario Torres (en adelante, Sra. Rosario Torres) a través de ASUME.

Por los fundamentos que expondremos, se deniega la expedición del recurso de *Certiorari.*

#### I

Según surge del expediente del caso, el 22 de noviembre de 2023, la Sra. Rosario Torres presentó ante el TPI una moción

Número Identificador

RES2024_____

solicitando la revisión de la pensión alimentaria establecida para beneficio de la menor de edad M.G.R, hija de las partes.[1] El caso fue referido por orden del TPI a la atención de la Examinadora de Pensiones Alimentarias.[2]

La primera vista sobre revisión de pensión alimentaria ante la EPA estaba pautada para el 5 de marzo de 2024, pero se suspendió y pospuso ante la incomparecencia del Sr. Gutiérrez González y por razón de que la Sra. Rosario Torres no pudo acreditar el diligenciamiento de la Notificación-Citación del Sr. Gutiérrez González. La segunda vista, estaba pautada para el 8 de abril de 2024, pero nuevamente se suspendió y pospuso ante la incomparecencia del Sr. Gutiérrez González. Esta vez, la Sra. Rosario Torres logró acreditar el diligenciamiento de la Notificación-Citación del Sr. Gutiérrez González.[3]

Luego de haber sido pospuesta en dos (2) ocasiones, finalmente la vista sobre revisión ante la EPA se celebró el 6 de mayo de 2024 mediante video conferencia. El Sr. Gutiérrez González tampoco compareció a esta vista a pesar de haber sido notificado y citado, por lo que la EPA procedió a celebrarla sin contar con el beneficio de su comparecencia. Evaluada la prueba presentada por la Sra. Rosario Torres, la EPA le imputó al Sr. Gutiérrez González "un ingreso de $2,773.33 mensuales a base de $15.00 la hora a tiempo completo siendo el último empleo conocido",[4] Finalizada la vista, la EPA rindió ese mismo día un *Informe*,[5] en el que, entre otras cosas, determinó lo siguiente:

> "Mediante la aplicación de las Guías, con un ingreso neto de combinado de las partes de $3,213.24 mensuales y un gasto de vivienda de $745.98

---

[1] La solicitud se presentó en el Caso Núm. K AL2014-0013 sobre alimentos, que posteriormente fue consolidado con el Caso Núm. SJ2023RF01684 sobre custodia y relaciones filiales.

[2] Véase, Entrada Núm. 13 del Expediente Digital del Caso Núm. SJ2023RF01684 en el Sistema Unificado de Manejo y Administración de Casos (SUMAC).

[3] Véase, Apéndice del recurso de *Certiorari*, págs. 9-10.

[4] Véase, Apéndice del recurso de *Certiorari*, pág. 12.

[5] Véase, Apéndice del recurso de *Certiorari*, págs. 9-19.

mensuales para 3 ocupantes, y un porcentaje representativo del ingreso neto disponible del peticionado del total de ingreso de las partes de un 44.35% la pensión alimentaria total para una menor alimentista de 1 año es como sigue:

Reglamento 8529

[…]

Pensión alimentaria total: $654.95

Reglamento 9535

[…]

Pensión alimentaria total: $ 669.40".

Finalmente, en dicho *Informe*, la EPA hizo las recomendaciones siguientes:

"1. Se imponga al peticionado una pensión alimentaria provisional de $655.00 mensuales del 22 de noviembre de 2023 al 30 de marzo de 2024 y de $669.00 mensuales del 1 de abril de 2024 en adelante, a ser pagada a través de la ASUME.

2. Se ordene al peticionado presentar en el término de 5 días la Planilla de Información Personal y Económica debidamente completada, juramentada y acompañada de todo documento que evidencie lo allí informado.

3. Se conceda a las partes, a partir de los 5 días concedidos al peticionado, un término de 30 días para realizar y culminar el descubrimiento de prueba.

4. Se tome conocimiento del señalamiento de vista final de alimentos mediante videoconferencia para el 3 de julio de 2024, a las 9:30 de la mañana. La peticionaria quedó citada en Sala y la representante legal informó tener disponible la fecha y hora señalada.

5. Se ordene a las partes presentar al menos 10 días antes de la vista final de alimentos señalada todo documento a presentarse en la vista, incluyendo las Planillas de Información Personal y Económica, apercibiéndole que el incumplimiento conllevará la suspensión de la vista, la cancelación del arancel de suspensión y el que se impongan sanciones económicas a la parte que incumpla.

6. Se aperciba a las partes y representante legal que las videoconferencias son equivalentes a una vista presencial ante el Tribunal, y por ello las partes y abogados deberán observar las normas de comportamiento y rigor en la discusión de los asuntos con la solemnidad aprobada.

El 4 de junio de 2024, el TPI emitió la *Resolución* aquí recurrida, mediante la cual le impartió su aprobación a las recomendaciones hechas por la EPA en el *Informe*.[6] De conformidad a dichas recomendaciones, se estableció una pensión alimentaria provisional de $655.00 mensuales para el periodo del 22 de noviembre de 2023 al 30 de marzo de 2024 y de $669.00 mensuales del 1 de abril de 2024 en adelante para beneficio de la menor M.G.R, la cual debía ser pagada por el Sr. Gutiérrez González a la parte recurrida Sra. Rosario Torres a través de ASUME. Se señaló una vista final sobre revisión de pensión alimentaria para el 3 de julio de 2024 mediante video conferencia; se les concedió a las partes un término para culminar el descubrimiento de prueba; y se les ordenó a las partes presentar, al menos diez (10) antes de la fecha señalada para la vista, todo documento que fuera a presentarse en esta, incluyendo la Planilla de Información Personal y Económica (PIPE) de las partes.

El 14 de junio de 2024, el Sr. Gutiérrez González presentó una *Reconsideración sobre "Pensión Provisional"*,[7] la cual fue referida por orden del TPI ante la consideración de la EPA.[8] En su moción, el Sr. Gutiérrez González impugnó la imputación de ingreso hecha por la EPA alegando que era empleado a tiempo parcial y que ganaba $10.00 la hora, lo que podía corroborarse en la PIPE que presentó ante el TPI el 10 de junio de 2024 junto con sus últimos tres (3) talonarios, la verificación de empleo de su patrono y su W-2 del 2023. Además, el Sr. Gutiérrez González alegó que incorrectamente se incluyó un préstamo personal de la Sra. Rosario Torres como parte de la hipoteca. Finalmente, el Sr. Gutiérrez González solicitó que se reconsiderara la cuantía de la pensión fijada tomando en

---

[6] Véase, Apéndice del recurso de *Certiorari*, págs. 20-22.
[7] Véase, Apéndice del recurso de *Certiorari*, págs. 34-38.
[8] Véase, Apéndice del recurso de *Certiorari*, pág. 39.

consideración que el 13 de junio de 2024 se dictó *Sentencia* en el Caso Núm. SJ2023RF01684 concediéndole la custodia compartida de la menor alimentista a las partes.

El 17 de julio de 2024, la EPA rindió un *Informe Especial*, en el que informó que se mantendría en su recomendación original, luego de evaluar la solicitud de reconsideración, así como la totalidad del expediente del caso.[9] Al respecto, la EPA expresó, en lo pertinente, lo siguiente:

> "[...] De un examen del récord electrónico, y así expuesto en el Informe de la Examinadora de Pensiones Alimentarias con fecha del 6 de mayo de 2024, se desprende que el peticionado fue debidamente notificado y citado para la vista y no compareció. Igualmente, se desprende que la pensión recomendada y acogida por el Honorable Tribunal mediante Resolución con fecha del 4 de junio de 2024 es una provisional basada en la prueba presentada por la peticionaria bajo juramento y mediante el trámite establecido en derecho ante la incomparecencia del peticionado sin justa causa. Por lo que, en su petición de reconsideración el peticionado pretende que sus alegaciones se consideren como prueba en contraposición a la prueba que bajo juramento y conforme a derecho presentó la peticionaria en la vista de alimentos. Asimismo, como bien expone en su solicitud de reconsideración el peticionado la pensión vigente ante su incomparecencia sin justa causa es un[a] provisional y este tendrá la oportunidad de presentar prueba y contrainterrogar conforme el procedimiento establecido en derecho en la vista final de alimentos señalada para el 26 de agosto de 2024 Por lo que, **RECOMENDAMOS:**
> **1. Se declare NO Ha Lugar la reconsideración solicitada por el peticionado."** (énfasis en el original).

El 17 de julio de 2024, notificada el 19 de julio de 2024, el TPI emitió *Orden* declarando No Ha Lugar la solicitud de reconsideración presentada por el Sr. Gutiérrez González.[10]

En desacuerdo con la determinación del TPI, el Sr. Gutiérrez González acudió ante nos el 15 de agosto de 2024 mediante el presente recurso de *Certiorari*. En este, señala la comisión por el TPI del error siguiente:

---

[9] Véase, Apéndice del recurso de *Certiorari,* pág. 41.
[10] Véase, Apéndice del recurso de *Certiorari,* págs. 42-44.

ERRÓ EL TRIBUNAL DE PRIMERA INSTANCIA AL APROBAR EL "INFORME ESPECIAL" RENDIDO POR LA EPA EN EL 2024 EN CUANTO A LA RECONSIDERACIÓN PRESENTADA POR EL SR. GUTIÉRREZ SOBRE UNA PENSIÓN ALIMENTARIA PROVISIONAL, EN RELACIÓN CON UNA IMPUTACIÓN INGRESO MENSUAL DE $2,561.17 DÓLARES A TIEMPO COMPLETO, COMO ALEGADO "SALARIO ANTERIOR" DESDE HACÍA "15 AÑOS" CON "RANGER AMERICAN COMO GUARDIA DE SEGURIDAD".

LO ANTERIOR, CONTRARIO A LO ESTABLECIDO EN EL REGLAMENTO DE GUÍAS MANDATORIAS EN CUANTO A IMPUTACIÓN DE INGRESOS TODA VEZ QUE:

- LA TOTALIDAD DE LA PRUEBA QUE OBRA DEL PROPIO EXPEDIENTE JUDICIAL, ESTABLECE QUE, COMO CUESTIÓN DE HECHO INCONTROVERTIDO, EL ÚLTIMO SALARIO DEL SR. GUTIÉRREZ, SEGÚN INFORME DE LA EPA DEL 2014, COMO GUARDIA DE SEGURIDAD A TIEMPO COMPLETO, ERA DE $1,319.50 MENSUAL;
- A LA FECHA DE RENDIDO EL "INFORME ESPECIAL" DE LA EPA, 17 DE JULIO DE 2024, YA HACÍA MAS DE UN (1) MES QUE CONSTABA EN EL EXPEDIENTE JUDICIAL LA PIPE DEL SR. GUTIÉRREZ CON EVIDENCIA DE QUE SU INGRESO AL MES ES DE $10.00 LA HORA, DESDE HACÍA AL MENOS TRES (3) AÑOS;
- LA IMPUTACIÓN DE INGRESOS PROVISIONAL REALIZADA POR LA EPA Y APROBADA POR EL TRIBUNAL DE PRIMERA INSTANCIA, NO SE AJUSTA A LOS CRITERIOS ESBOZADOS EN EL ARTÍCULO 10 DEL REGLAMENTO 9535 Y EL ARTÍCULO 12 DEL REGLAMENTO 8529, GUÍAS MANDATORIAS APLICABLES AL CASO, SEGÚN SE DISCUTIRÁ. LA TOTALIDAD DE LA PRUEBA SUGIERE QUE LA PENSIÓN ALIMENTARIA IMPUESTA NO ES NI JUSTA, NI RAZONABLE.

El 23 de agosto de 2024, emitimos *Resolución* concediéndole a la parte recurrida un término de diez (10) días para expresar su posición con respecto al recurso. Transcurrido dicho término sin que la parte recurrida haya comparecido, procedemos a resolver sin contar con el beneficio de su posición.

**II**

**A.**

El Artículo 4.006 de la Ley Núm. 201-2003, según enmendada, *"Ley de la Judicatura del Estado Libre Asociado de Puerto Rico de 2003"*, 4 LPRA sec. 24y, establece que el Tribunal de Apelaciones conocerá, "[m]ediante auto de *certiorari* expedido a su discreción, de cualquier resolución u orden dictada por el Tribunal de Primera Instancia." El *certiorari* ha sido definido por el Tribunal Supremo como "un mecanismo procesal de carácter discrecional que le permite a un tribunal de mayor jerarquía revisar las determinaciones del tribunal recurrido." *Rivera et al. v. Arcos Dorados et al.*, 212 DPR 194, 207 (2023); *McNeil Healthcare v. Mun. Las Piedras I*, 206 DPR 391, 403 (2021); *IG Builders et al. v. BBVAPR*, 185 DPR 307, 337-338 (2012). Véase, además, Artículo 670 del Código de Enjuiciamiento Civil, 32 LPRA sec. 3491.

La expedición de un recurso de *certiorari* para revisar órdenes y resoluciones interlocutorias dictadas por el Tribunal de Primera Instancia está limitada por la Regla 52.1 de Procedimiento Civil, 32 LPRA Ap. V, R. 52.1. Esta Regla establece que el recurso de *certiorari* "solamente será expedido por el Tribunal de Apelaciones cuando se recurra de una resolución u orden bajo las Reglas 56 [Remedios Provisionales] y 57 [*Injunction*] o de la denegatoria de una moción de carácter dispositivo." *Íd.* Por excepción a lo dispuesto anteriormente, la Regla 52.1 de Procedimiento Civil, *supra*, también autoriza la revisión mediante *certiorari* de órdenes o resoluciones interlocutorias dictadas por el Tribunal de Primera Instancia cuando se recurra de decisiones sobre los asuntos siguientes: la admisibilidad de testigos de hechos o peritos esenciales; asuntos relativos a privilegios evidenciarios; anotaciones de rebeldía; en casos de relaciones de familia; en casos que revistan interés público, o en cualquier otra situación en la cual esperar a la apelación

constituiría un fracaso irremediable de la justicia.[11] *Íd.* De esta forma, se reconoce, según explica el Profesor Hernández Colón, "que ciertas determinaciones interlocutorias pueden afectar sustancialmente el resultado del pleito o tener efectos limitativos para la defensa o reclamación de una parte o conllevar cuestiones neurálgicas o de política pública que deben estar sujetos a revisión de forma inmediata." R. Hernández Colón, *Práctica jurídica de Puerto Rico: derecho procesal civil,* 6ta ed., San Juan, Ed. LexisNexis, 2017, pág. 533.

Conforme establece la Regla 52.1 de Procedimiento Civil, *supra,* "[c]ualquier otra resolución u orden interlocutoria dictada por el Tribunal de Primera Instancia podrá ser revisada mediante el recurso de apelación que se presente contra la sentencia final dictada por el Tribunal de Primera Instancia, sujeto a lo dispuesto en la Regla 50 sobre los errores no perjudiciales."

Resulta necesario destacar que "[l]a característica distintiva de este recurso se asienta en la discreción encomendada al tribunal revisor para autorizar su expedición y adjudicar sus méritos". *Rivera et al. v. Arcos Dorados et al.*, supra, pág. 209, citando a *IG Builders et al. v. BBVAPR,* supra, pág. 338. En el ámbito judicial, el concepto discreción ha sido definido como "una forma de razonabilidad aplicada al discernimiento judicial para llegar a una condición justiciera." *IG Builders et al. v. BBVAPR,* supra, pág. 338; *García v. Padró*, 165 DPR 324, 334-335 (2005); *Pueblo v. Ortega Santiago,* 125 DPR 203, 211 (1990).

El Tribunal Supremo ha señalado que la discreción del Tribunal de Apelaciones para expedir un auto de *certiorari* no debe ejercerse de manera aislada en abstracción del resto del Derecho. *Íd.* En ese sentido, la Regla 40 del Reglamento del Tribunal de

---

[11] Estas disposiciones fueron incorporadas a la Regla 52.1 de Procedimiento Civil de 2009, *supra,* mediante la Ley Núm. 220-2009 y la Ley Núm. 177-2010.

Apelaciones, 4 LPRA Ap. XXII-B, enmarca los criterios que el Tribunal de Apelaciones deberá tomar en consideración al atender una solicitud de expedición de un auto de *certiorari*. Esta Regla dispone lo siguiente:

> "El tribunal tomará en consideración los siguientes criterios al determinar la expedición de un auto de certiorari o de una orden de mostrar causa:
>
> (A) Si el remedio y la disposición de la decisión recurrida, a diferencia de sus fundamentos, son contrarios a derecho.
>
> (B) Si la situación de hechos planteada es la más indicada para el análisis del problema.
>
> (C) Si ha mediado prejuicio, parcialidad o error craso y manifiesto en la apreciación de la prueba por el Tribunal de Primera Instancia.
>
> (D) Si el asunto planteado exige consideración más detenida a la luz de los autos originales, los cuales deberán ser elevados, o de alegatos más elaborados.
>
> (E) Si la etapa del procedimiento en que se presenta el caso es la más propicia para su consideración.
>
> (F) Si la expedición del auto o de la orden de mostrar causa no causan un fraccionamiento indebido del pleito y una dilación indeseable en la solución final del litigio.
>
> (G) Si la expedición del auto o de la orden de mostrar causa evita un fracaso de la justicia." Regla 40 del Reglamento del Tribunal de Apelaciones, *supra*.

Lo anterior implica que la determinación de expedición del auto de *certiorari* deber ser evaluada en el contexto de todos los derechos aplicables y bajo las pautas específicas que la Regla 40 el Reglamento del Tribunal de Apelaciones, *supra*, proporciona.

**B.**

En nuestra jurisdicción, los casos de derecho a alimentos de menores "están revestidos del más alto interés público, siendo el interés principal el bienestar del menor." *Díaz Rodríguez v. García Neris*, 208 DPR 706, 718 (2022); *Santiago, Maisonet v. Maisonet Correa*, 187 DPR 550, 559 (2012); *Toro Sotomayor v. Colón Cruz*, 176 DPR 528 (2009); *Argüello v. Argüello*, 155 DPR 62, 70 (2001). "Se entiende por alimentos todo lo que es indispensable para el

sustento, la vivienda, la vestimenta, la recreación y la asistencia médica de una persona, según la posición social de su familia." Artículo 653 del Código Civil, 31 LPRA sec. 7531. Cuando el alimentista es menor de edad, también comprenden "su educación, las atenciones de previsión acomodadas a los usos y a las circunstancias de su entorno familiar y social y los gastos extraordinarios para la atención de sus condiciones personales especiales." *Íd.* Si el alimentista alcanza la mayoría de edad mientras cursa ininterrumpidamente estudios profesionales o vocacionales, el Artículo 655 del Código Civil, 31 LPRA sec. 7533, dispone que "la obligación de alimentarlo se extiende hasta que obtenga el grado o título académico o técnico correspondiente o hasta que alcance los veinticinco (25) años de edad, lo que ocurra primero, a discreción del juzgador y dependiendo las circunstancias particulares de cada caso." Véase, *Santiago, Maisonet v. Maisonet Correa*, supra, pág. 560; *Key Nieves v. Oyola Nieves*, 116 DPR 261 (1985).

La obligación de alimentar al menor es inherente a la maternidad y la paternidad por lo que recae sobre los obligados desde el momento en que la relación filial queda establecida legalmente, independientemente de las fuentes de las cuales emana la obligación de alimentar. *Díaz Rodríguez v. García Neris*, supra; *Santiago, Maisonet v. Maisonet Correa*, supra, págs. 560-561. Esta obligación es personal de cada uno de los padres por lo que debe ser satisfecha del propio peculio y de forma proporcional a sus recursos y a la necesidad del menor. *Díaz Rodríguez v. García Neris*, supra; *Pesquera Fuentes v. Colón Molina*, 202 DPR 93, 108 (2019); *Figueroa Robledo v. Rivera Rosa*, 149 DPR 565 (1999).

Con el fin de lograr que los obligados contribuyan a la manutención de los menores dependientes, se aprobó la Ley Núm. 5 de 30 de diciembre de 1986, según enmendada, conocida como *"Ley Orgánica de la Administración para el Sustento de Menores"*, 8

LPRA sec. 502 *et seq. Díaz Rodríguez v. García Neris*, supra; *Santiago, Maisonet v. Maisonet Correa*, supra, págs. 562-563. También se adoptaron las Guías Mandatorias para Computar las Pensiones Alimentarias en Puerto Rico, Reglamento Núm. 8529, Departamento de Estado, 30 de octubre de 2014, y las Guías Mandatorias para Fijar y Modificar Pensiones Alimentarias en Puerto Rico, Reglamento Núm. 9535, Departamento de Estado, 15 de febrero de 2024, para determinar las pensiones alimentarias de los alimentistas menores de edad en Puerto Rico, basadas en criterios numéricos y descriptivos, los cuales faciliten el computo de la cuantía de la obligación alimentaria. Véase, Artículo 2 del Reglamento Núm. 9535; Artículo 19 de la Ley Núm. 5 de 30 de diciembre de 1986, *supra.*

A través de un descubrimiento de prueba amplio y compulsorio sobre la situación económica de las partes, las Guías permiten establecer de manera uniforme y equitativa la aportación monetaria de cada parte mediante criterios numéricos y descriptivos que toman en consideración los ingresos de los obligados y las necesidades de los menores. *Díaz Rodríguez v. García Neris*, supra; *De León Ramos v. Navarro Acevedo*, 195 DPR 182 (2016); *Santiago, Maisonet v. Maisonet Correa*, supra, pág. 564.

En lo pertinente al caso ante nuestra consideración, las Guías definen el ingreso imputado como aquel que "el juzgador le atribuye a la persona custodia o a la persona no custodia, el cual se tomará en consideración al momento de determinar la pensión alimentaria para beneficio de un menor de edad." Artículo 5 (20) del Reglamento Núm. 9535. Véase, además, Artículo 7 (18) del Reglamento Núm. 8529.

En cuanto a la imputación de ingresos, el Artículo 8 del Reglamento Núm. 9535 dispone lo siguiente:

"El juzgador, imputará ingresos a la persona custodia o a la persona no custodia cuando:

a) Existan indicios o señales de que el ingreso de la persona es mayor al que esta informa.
b) La persona está desempleada.
c) La persona está trabajando a tiempo parcial y el ingreso que recibe es menor al salario mínimo federal prevaleciente en Puerto Rico a base de cuarenta (40) horas semanales. d) La persona cuenta con un ingreso bruto mensual menor al salario mínimo federal prevaleciente en Puerto Rico a base de cuarenta (40) horas semanales. Sin embargo, en aquellos casos en los que la persona trabaje a tiempo completo y aun así su ingreso sea inferior al que aquí se dispone/ no se le imputara y su ingreso bruto se determinará de conformidad con lo establecido en el Articulo 7, inciso 1, de este Reglamento.
e) La persona haya reducido su capacidad productiva para eludir la responsabilidad de alimentar o haya sido despedida de su empleo por causas imputadas a esta."
Véase, además, Artículo 10 del Reglamento Núm. 8529.

En cuanto a la cantidad que se imputará, el Artículo 10 del

Reglamento Núm. 9535 dispone lo siguiente:

"1. En los cases en los que, de conformidad con este Reglamento, proceda imputar ingresos, el juzgador lo hará de acuerdo con las siguientes normas:

(a) Regla general:
(1) Se imputará el salario mínimo federal prevaleciente en Puerto Rico a base de cuarenta (40) horas semanales o una cantidad mayor según la totalidad de la prueba que reciba el juzgador. Al momento de imputar una cantidad mayor al salario mínimo federal, el juzgador podrá considerar los factores siguientes: la empleabilidad de la persona custodia o la de la persona no custodia, su historial de trabajo, los ingresos devengados anteriormente, su profesión y preparación académica, su estilo de vida, los gastos en los que la persona incurre, la naturaleza y cantidad de las propiedades con las que cuenta, la realidad de la economía informal, el ingreso promedio del oficio, ocupación o profesión, destrezas tecnológicas o trabajo virtual y cualquier otra prueba pertinente.
(2) En los casos en los que se demuestre que la persona redujo su capacidad productiva con el fin de eludir su responsabilidad de alimentar o haya sido despedida de su empleo por causas imputadas a esta, se le imputara el salario mínimo federal prevaleciente en Puerto Rico a base de cuarenta (40) horas semanales o el último salario devengado por la persona, lo que resulte mayor.

[…]." Véase, además, Artículo 12 del Reglamento Núm. 8529.

**C.**

Es norma conocida en nuestro ordenamiento jurídico que,

"ante la ausencia de error manifiesto, prejuicio, parcialidad o pasión, no se favorece la intervención de los tribunales apelativos para revisar la apreciación de la prueba, la adjudicación de credibilidad o las determinaciones de hechos formuladas por el Tribunal de Primera Instancia". *Ortiz Ortiz v. Medtronic.*, 209 DPR 759, 778 (2022), citando a *Santiago Ortiz v. Real Legacy et al.*, 206 DPR 194, 219 (2021). Ello implica que un tribunal apelativo debe abstenerse de intervenir con las determinaciones de hechos y la adjudicación de credibilidad que realizó el foro primario, evitando descartarlas, modificarlas o sustituirlas por su criterio, aun cuando en su evaluación particular hubiera emitido un juicio distinto. *Serrano Muñoz v. Auxilio Mutuo*, 171 DPR 717, 741 (2007); *Argüello v. Argüello,* supra, pág. 78.

El fundamento de esta norma, en cuanto a la prueba testifical, yace en que es el foro primario quien de ordinario se encuentra en mejor posición para aquilatarla, ya que es quien ve y oye a los testigos, pudiendo apreciar sus gestos, titubeos, contradicciones, dudas, vacilaciones y, por consiguiente, formar en su conciencia la convicción en cuanto a si dicen o no la verdad. *Suárez Cáceres v. Com. Estatal Elecciones,* 176 DPR 31, 67-68 (2009). En contraste, los foros apelativos solo contamos con récords mudos e inexpresivos. *Trinidad v. Chade,* 153 DPR 280, 291 (2001). Esta norma, sin embargo, no es absoluta, pudiendo un apelante presentar prueba que demuestre que la apreciación realizada por el foro sentenciador no fue correcta o no está refrendada por la prueba presentada y admitida. *Serrano Muñoz v. Auxilio Mutuo,* supra*,* pág. 741. Por todo lo cual, se ha establecido la regla fundamental en nuestro ordenamiento de que los tribunales apelativos no intervendremos con la apreciación de la prueba, la adjudicación de credibilidad y las determinaciones de hechos que realiza el Tribunal de Primera Instancia, a menos que se demuestre que el juzgador

actuó movido por pasión, prejuicio o parcialidad, o que incurrió en error manifiesto. *Dávila Nieves v. Meléndez Marín,* 187 DPR 750, 753 (2013). Véase la Regla 42.2 de Procedimiento Civil, 32 LPRA Ap. V, R. 42.2.

En cuanto a la prueba testifical, procede nuestra intervención con la apreciación de la prueba o la adjudicación de credibilidad de los testigos en aquellos casos en que, luego de un análisis integral de la prueba, nos cause una insatisfacción o intranquilidad de conciencia tal que conmueva nuestro sentido básico de justicia. *Pueblo v. Cabán Torres*, 117 DPR 645, 648 (1986). Por tanto, quien impugne una sentencia o resolución bajo estos parámetros deberá presentar evidencia sustancial que derrote la presunción de corrección que cobija la decisión del foro primario. Esto es, evidencia que en una mente razonable pueda aceptarse como adecuada para sostener una conclusión. *Vázquez Cintrón v. Banco Desarrollo,* 171 DPR 1, 25 (2007).

No obstante, esta norma de deferencia no alcanza la apreciación de la prueba documental o pericial realizada por el foro de primera instancia. En ese sentido, la jurisprudencia del Tribunal Supremo ha sido consistente en que los foros revisores nos encontramos en igualdad de condiciones con el foro sentenciador para evaluar y apreciar la prueba documental admitida en evidencia. *Albino v. Ángel Martínez, Inc.,* 171 DPR 457, 487 (2007).

**III**

Evaluado el presente recurso de *Certiorari* a la luz de los criterios establecidos en la Regla 40 del Reglamento del Tribunal de Apelaciones, *supra,* concluimos que no procede nuestra intervención con la decisión del dictamen recurrido, por lo que determinamos denegar su expedición. De un examen del expediente del caso surge que el Sr. Gutiérrez González no compareció a la vista evidenciaría a pesar de haber sido debidamente notificado y citado.

Únicamente compareció la Sra. Rosario Torres y su representación legal. El Sr. Gutiérrez González tampoco sometió su PIPE actualizada antes de la Vista celebrada el 6 de mayo de 2024. Ante su incomparecencia, la EPA correctamente procedió a hacer una imputación de salario y establecer una pensión provisional al Sr. Gutiérrez González basada en la prueba que tuvo ante sí y el derecho aplicable.

Finalmente, del expediente surge además que está pendiente la vista final ante la EPA, en la cual el Sr. Gutiérrez González tendrá oportunidad para exponer su posición, presentar prueba a su favor y refutar la prueba contraria.

**IV**

Por los fundamentos expuestos, se deniega la expedición del recurso de *Certiorari*.

Lo acordó el Tribunal y lo certifica la Secretaria del Tribunal de Apelaciones.


Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones